**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**WILLIAM W. WARE,**

**Plaintiff,**

**v.** **Case No. 8:25-cv-02710-AAS**

**FRANK BISIGNANO,**
**Commissioner of the Social**
**Security Administration,**

**Defendant.**
______________________________/

**ORDER**

William W. Ware requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including the transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the parties' memoranda, the Commissioner's decision is **REMANDED**.

## I. PROCEDURAL HISTORY

On November 4, 2022, Mr. Ware filed an application for a period of disability and DIB alleging disability, with an alleged disability onset date of August 8, 2021. (Tr. 17). Mr. Ware's claims were denied initially and on

reconsideration. (*Id.*). Mr. Ware requested a hearing before an ALJ. (*Id.*). An ALJ held an administrative hearing on March 25, 2025, and issued a decision finding Mr. Ware not disabled on April 4, 2025. (Tr. 17–26). Mr. Ware filed a request for review of the ALJ's decision, which the Appeals Council denied on August 7, 2025. (Tr. 1–6). The hearing decision then became the Commissioner's final decision. 20 C.F.R. § 404.900(a)(5). Mr. Ware now requests review of the Commissioner's final decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Background

Mr. Ware was 51 years old on his alleged disability onset date. (Tr. 209). Mr. Ware has two years of college education and prior work as an electrician helper. (Tr. 25). Mr. Ware alleged disability due to memory loss and narcolepsy issues. (Tr. 232).

### B. Summary of the ALJ's Decision

To determine whether a claimant is disabled, the Social Security Regulations prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)). Under this process, an ALJ must assess whether a claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in his past relevant work; and (5) can

perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)); 20 C.F.R. § 404.1520(a)(4). Although a claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, a claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

Here, at step one of the sequential evaluation process, the ALJ found Mr. Ware had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 19). At step two, the ALJ found Mr. Ware had these severe impairments: status post non-Hodgkin lymphoma and chemotherapy treatment, monocular vision, and periodic limb movement disorder. (*Id.*). At step three, the ALJ found Mr. Ware had not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R, Part 404, Subpart P, Appendix 1. (*Id.*).

The ALJ then determined Mr. Ware had the RFC to perform light work,[1] except:

> [H]e can occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl, but he can never climb ladders, ropes, or scaffolds. He can frequently reach, handle and finger. He can never be exposed to workplace hazards such as unprotected heights and moving machinery. Due to his monocular vision, he cannot ascertain depth or the speed of moving objects and his field of vision is limited, so there can be no work requiring binocular vision or a full field of vision.

(Tr. 20).

At step four, the ALJ determined Mr. Ware could perform his past relevant work of a "customer service representative, utilities." (Tr. 25). Thus, the ALJ concluded Mr. Ware was not disabled within the meaning of the Social Security Act from August 8, 2021, through the date of the decision. (*Id.*).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

**B. Issue on Appeal**

Mr. Ware argues the ALJ failed to properly evaluate his mental

impairments at step two, resulting in an erroneous decision that he could perform his past relevant work. (Docs. 12, 17). In response, the Commissioner contends that substantial evidence supports the ALJ's decision that Mr. Ware is not disabled. (Doc. 16).

As referenced above, an ALJ must assess at step two whether a claimant has a medically determinable impairment or combination of impairments that is severe. *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (per curiam) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). The severity of an impairment in this context is "measured in terms of its effect upon [a claimant's] ability to work, and not simply in terms of [a] deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). An impairment is therefore deemed to be severe only if it significantly limits a claimant's physical or mental capacity to engage in basic work activities. *See* 20 C.F.R. §404.1522(a); *Bridges v. Bowen*, 815 F.2d 622, 625–26 (11th Cir. 1987) (per curiam). A non-severe impairment, on the other hand, does not cause such a restriction. *See* 20 C.F.R. § 404.1522(a).

In the end, the bar for showing a severe impairment is a low one, *McCormick*, 619 F. App'x at 857 (citation omitted), and the finding of any severe impairment is enough to satisfy the step two inquiry, *Packer v. Comm'r,*

*Soc. Sec. Admin.*, 542 F. App'x 890, 891 (11th Cir. 2013) (per curiam) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Here, the ALJ found Mr. Ware had these severe impairments: status post non-Hodgkin lymphoma and chemotherapy treatment, monocular vision, and periodic limb movement disorder. (Tr. 19).

However, where a claimant presents a "colorable" claim of mental impairment, as in this case, the ALJ is required to complete a Psychiatric Review Technique (PRT) to evaluate the severity of the mental impairment. *See Moore v. Barnhart*, 405 F.3d 1208, 1213–14 (11th Cir. 2005) (per curiam); 20 C.F.R. § 404.1520a. This technique requires an assessment of how a claimant's mental impairment affects the claimant's functional limitations in four areas known as the "paragraph B" criteria:[2] (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. See 20 C.F.R. § 404.1520a(c)(3); *see also* Social Security Ruling 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

If an ALJ determines after applying the PRT that a claimant has no or

---

[2] The "paragraph B" criteria refer to the ALJ's decision at step two in deciding whether a claimant suffers from a severe impairment or at step three in deciding whether a claimant's severe impairment qualifies under a listing. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) ("The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis.") (citing *Winschel v. Acting Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).

only mild functional restrictions in these four domains, he will generally conclude that the claimant's mental impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1). The Social Security Regulations dictate that an ALJ must provide a specific explanation for her opinion, including the degree of limitation found in each area.[3] *Id.* § 404.1520a(c)(4), (e)(4). An ALJ must then incorporate the results of the PRT into her findings and conclusions. *See Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (per curiam) (citing *Moore*, 405 F.3d at 1213–14).

The PRT, however, is separate and apart from an ALJ's RFC determination at step four, which mandates that the ALJ gauge a claimant's maximum ability to do work despite her impairments, both severe and non-severe. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (per curiam) (noting that "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC") (citing *Bowen v. Heckler*, 748 F.2d 629, 634–35 (11th Cir. 1984)). The RFC analysis at step four,

---

[3] More specifically, "[t]he decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairments(s)" and "must include a specific finding as to the degree of limitation in each of the functional areas described [above]." *See* 20 C.F.R. § 404.1520a(e)(4).

therefore, represents a more detailed assessment of a claimant's ability to function than the one performed at step two. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). As a result, even when an ALJ finds that a claimant suffers from a non-severe mental impairment at step two, the ALJ's RFC determination at step four must consist of more than an implicit or perfunctory finding that the claimant's affliction "imposed no significant limitations on his work-related mental capacities." *Schink*, 935 F.3d at 1269.

Here, the ALJ did not include Mr. Ware's mental impairments in her list of medically determinable or severe impairments at step two. In fact, the ALJ did not even consider Mr. Ware's mental impairments at this step. The ALJ also did not provide a specific explanation for the degree of limitation found in each area in the PRT assessment. *See* 20 C.F.R. § 404.1520a(c)(4), (e)(4). Instead, when considering Mr. Ware's RFC, the ALJ merely found Jessy Sadovnik, Psy.D., and Pauline Hightower, Psy.D.'s opinions that Mr. Ware had mild limitations in all four mental domains "persuasive." (Tr. 23, 62, 72). The ALJ provided no independent assessment or findings regarding the four functional domains in the Paragraph B criteria.

The ALJ also failed to explicitly weigh Mr. Ware's mental impairments at step four in a meaningful manner, which is especially notable given the requirements of a "customer service representative, utilities" job. According to

the DOT, a customer service representative, utilities (as described by the VE, but the DOT title is actually "investigator, utility bill complaints"), DOT 241.267-034:

> Investigates customers' bill complaints for gas and electric-power service: Examines weather reports for weather conditions during billing period that might have contributed to increased use of service. Examines meter reading schedules to determine if early readings increased billing period. Reviews meter books, microfilm, computer printouts, and machine accounting records for errors causing high bill. Orders tests to detect meter malfunctions. Confers with customer in person, by telephone, or dictates correspondence to explain reasons for high bill. Prepares forms required for correction of meter reading or billing errors.

The domains of applying information, interacting, concentrating and maintaining pace, and adapting or managing himself may be necessary for this job (as last updated in the DOT in 197712). Thus, there is no reasonable basis to suggest that the ALJ's exclusion of mild mental impairments is harmless. *See Lee v. Kijakazi*, No. 21-CV-80677-DMM/BER, 2022 WL 4134355, at *5 (S.D. Fla. June 28, 2022), *report and recommendation adopted*, No. 21-80677-CV, 2022 WL 4131170 (S.D. Fla. Sept. 12, 2022) (". . . a finding that mental impairment is mild and thus non-severe at step two does not obviate the need for a separate analysis of that mental impairment's effect on RFC when the claimant has other severe impairments.").

The fact that the ALJ did not adequately explain her PRT evaluation of Mr. Ware's mental impairments is dispositive under the circumstances

presented. In short, the ALJ did not provide the court "with sufficient reasoning for determining that the proper legal analysis . . . [was] conducted[.]" *Schink*, 935 F.3d at 1269 (citation omitted). Thus, the court concludes that Mr. Ware's challenge to the ALJ's decision has merit and warrants remand.[4]

## IV. CONCLUSION

For the reasons stated, the Commissioner's decision is **REMANDED**, and the Clerk of Court is directed to enter judgment for Mr. Ware and close the file.

**ORDERED** in Tampa, Florida, on October 29, 2026.

Amanda Arnold Sansone

AMANDA ARNOLD SANSONE
United States Magistrate Judge

[4] In reaching this result, the court expresses no opinion as to whether the ALJ should have included any mental limitations in his RFC determination or in his hypotheticals to the VE.